# IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

## No. 23-2293

---

IN RE: U LOCK, INC.
Debtor.

U LOCK INC.,
*Appellant,*

v.

CHRISTINE BIROS,
*Appellee.*

---

## BRIEF OF APPELLEE, CHRISTINE BIROS

---

On appeal from the Order Entered on June 21, 2023, by the United States District Court for the Western District of Pennsylvania at Case 2:22-cv-1222, affirming the August 10, 2022 Order of the United States Bankruptcy Court for the Western District of Pennsylvania dismissing the Adversary Proceeding at Case 2:22-ap-2048

---

Stuart C. Gaul, Jr., Esquire
PA ID #74529
BERNSTEIN-BURKLEY, P.C.
601 Grant Street, 9th Floor
Pittsburgh, PA 15219
Telephone: (412) 456-8100
Facsimile:  (412) 456-8135
sgaul@bernsteinlaw.com

*Counsel for Appellee*

# TABLE OF CONTENTS

TABLE OF CONTENTS .............................................................i

TABLE OF AUTHORITIES.................................................. iii

JURISDICTIONAL STATEMENT ..........................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ..............4

STATEMENT OF RELATED CASES AND PROCEEDINGS.................5

CONCISE STATEMENT OF THE CASE .................................7

   A.  The State-Court Ownership Action .................................7

   B.  The Involuntary Petition and Subsequent Events........................10

   C.  The Adversary Proceeding in the Bankruptcy Court....................14

   D.  The August 9 Hearing and the August 10 Orders ........................15

   E.  The District Court Appeal.............................................18

   F.  This Appeal..............................................................20

SUMMARY OF ARGUMENT .................................................21

ARGUMENT ...................................................................23

   A.  This Court Should Dismiss This Appeal Because U Lock's Appeal to the District Court Was Untimely. ....................................23

   B.  U Lock Could Not Bring or Maintain the Adversary Proceeding.. ...........................................................28

   C.  The Bankruptcy Court Was Correct to Dismiss the Adversary Proceeding. ...........................................................39

CONCLUSION ........................................................................................ 44

COMBINED CERTIFICATIONS

# TABLE OF AUTHORITIES

<u>Cases</u>

*Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 54 V.I. 948 (3d Cir. 2011) ............................................................................... 37

*Bauer v. Commerce Union Bank*, 859 F.2d 438 (6th Cir. 1988) ............ 40

*Biros v. U Lock Inc.*, 255 A.3d 489 (Pa. Super. Ct. 2021) ........................ 8

*Biros v. U Lock Inc.*, 271 A.3d 875 (Pa. 2022) ........................................ 8

*Bowles v. Russell*, 551 U.S. 205 (2007) ................................................... 25

*Buncher Co. v. Off. Comm. of Unsecured Creditors of GenFarm Ltd. P'ship IV*, 229 F.3d 245 (3d Cir. 2000) ................................................ 37

*Cain v. Hyatt*, 101 B.R. 440 (E.D. Pa. 1989) .......................................... 40

*City of Chicago v. Fulton*, 141 S. Ct. 585 (2021) .................................... 30

*Cuffee v. Atlantic Bus. & Cmty. Dev. Corp. (In re Atlantic Bus. & Cmty. Corp.)*, 901 F.2d 325 (3d Cir. 1990 ................................................. 35, 36

*Eisenstadt v. Baird*, 405 U.S. 438 (1972) ................................................ 37

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006) ............................ 43

*Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159 (3d Cir. 2010) ....................................................................................... 23

*Hamer v. Neighborhood Housing Servs. of Chicago*, 583 U. S. 17, 25 (2017) ..................................................................................................... 25

*Harrow v. Department of Defense*, No. 23-21, 2024 U.S. LEXIS 2171 (May 16, 2024) ...................................................................................... 25

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1 (2000) ........................................................................ 34

*Healthcare Real Estate Partners, LLC v. Summit Healthcare REIT, Inc (In re Healthcare Real Estate Partners, LLC), 941 F.3d 64 (3d Cir. 2019).* .................................................................... 35

*Icon Group, Inc. v. Mahogany Run Dev. Corp.*, 829 F.2d 473 (3d Cir. 1987) ........................................................................ 39

*In re Caribbean Tubular Corp.*, 813 F.2d 533 (1st Cir. 1987) ............... 27

*In re Caterbone*, 640 F.3d 108 (3d Cir. 2011) ...................... 23, 24, 25, 27

*In re Denby-Peterson*, 941 F.3d 115 (3d Cir. 2019) ............................... 43

*In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625 (3d Cir. 2017) ................................................................ 29

*In re Imerys Talc America, Inc.*, 38 F.4th 361 (3d Cir. 2022)....20, 37, 38

*In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241 (3d Cir. 2009)........ 37

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235 (3d Cir. 2012) ................................................ 43

*In re Trib. Media Co.*, 902 F.3d 384 (3d Cir. 2018) ............................... 37

*In re U Lock*, Case No. 22-20823-GLT, 2024 Bankr. LEXIS 484 (Bankr. W.D. Pa. Feb. 29, 2024)................................................ 11

*In re VistaCare Grp., LLC*, 678 F.3d 218 (3d Cir. 2012) .................. 28, 30

*In re W.R. Grace & Co.*, 591 F.3d 164 (3d Cir. 2009) ............................ 23

*Infinity Investors Ltd. v. Kingsborough (In re Yes! Entm't Corp.)*, 316 B.R. 141 (D. Del. 2004 ........................................................ 39

iv

*Jennings v. Stephens*, 574 U.S. 271 (2015).....................................42

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)......................................29

*Majestic Star Casino, LLC v. Barden Dev., Inc. (In re Majestic Star Casino, LLC), 716 F.3d (3d Cir.2013)*.........................................29, 37

*Nagle v. Commercial Credit Business Loans, Inc.*, 102 F.R.D. 27 (E.D. Pa. 1983)........................................................................................40

*New Jersey Bankers Association v. Attorney General New Jersey*, 49 F.4th 849 (3d Cir. 2022)........................................................................28

*Nuveen Municipal Trust v. Withumsmith Brown, P.C.*, 692 F.3d 283 (3d Cir. 2012)........................................................................................23

*O'Dowd v. Trueger (In re O'Dowd)*, 233 F.3d 197 (3d Cir. 2000)...........31

*Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 338 F.3d 548 (3d Cir. 2003 .................34

*Phoenician Mediterranean Villa, LLC v. Swope (in re J & S Properties, LLC), 872 F.3d 138 (3d Cir. 2017)*.......................................................28

*Potter v. Cozen & O'Connor*, 46 F.4th 148 (3d Cir. 2022)...............28, 29

*Seneca Resources Corp. v. Township of Highland*, 863 F.3d 245 (3d Cir. 2017)........................................................................................26

*Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433 (2017)................28

*United States v. American Railway Express Co.*, 265 U.S. 425 (1924)..42

*United States v. Ruiz*, 536 U.S. 622 (2002) ...............................................1

*United States v. Whiting Pools, Inc.*, 462 U.S. 198 (1983)....................30

*Warth v. Seldin*, 422 U.S. 490 (1975)......................................................29

v

*Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 655 (2015)...............25

## Constitution

U.S. Const. art III……………………………………………...……..25, 28

## Statutes

5 U.S.C. § 7701 ....................................................................... 25

11 U.S.C. § 303 ....................................................................... 31

11 U.S.C. § 327 ....................................................................... 32

11 U.S.C. § 362……………………………………………………*passim*

11 U.S.C. § 363 ....................................................................... 40

11 U.S.C. § 541……………………………………………19, 30, 31, 34

11 U.S.C. § 544 ....................................................................5, 18

11 U.S.C. § 547 ....................................................................5, 19

11 U.S.C. § 548 ....................................................................5, 19

11 U.S.C. § 550 ..........................................................................5

11 U.S.C. § 701 ....................................................................... 10

11 U.S.C. § 704 ....................................................................34, 42

11 U.S.C. §1301 ....................................................................... 16

28 U.S.C. § 151 ....................................................................... 25

28 U.S.C. § 152 ....................................................................... 25

28 U.S.C. § 157 ................................................................................ 1,25

28 U.S.C. § 158 ........................................................................... *passim*

28 U.S.C. § 1291 ..................................................................................3

28 U.S.C. § 2107 ..................................................................................3

Rules

Fed. R. App. P. 4............................................................... 3, 24, 25

Fed. R. App. P. 29...............................................................................43

Fed. R. App. P. 31...............................................................................42

Fed. R. Bankr. P. 8002 ............................................................. *passim*

Fed. R. Bankr. P. 7001 ........................................................................1

Fed. R. Bankr. P. 7017 ......................................................................41

Fed. R. Civ. P. 17...............................................................................41

Pa. R. App. P. 1925............................................................................13

Secondary Materials

Black's Law Dictionary, at 64 (6th ed. Abridged) ....................................42

## JURISDICTIONAL STATEMENT

This appeal is from the decision of the U.S. District Court for the Western District of Pennsylvania (the "District Court") at Case 2:22-cv-01485-NBF (the "District Court Appeal"), which affirmed the order of the U.S. Bankruptcy Court for the Western District of Pennsylvania (the "Bankruptcy Court") dismissing an adversary proceeding (the "Adversary Proceeding") that U Lock Inc., the Appellant here and the debtor in the Bankruptcy Court at Case No. 22-20823-GLT (the "U Lock Bankruptcy Case"), had filed against Appellee Christine Biros in that court at Case 22-ap-2048.

The Bankruptcy Court had jurisdiction to consider the Adversary Proceeding, which attempted to assert a claim for violation of the automatic stay created by 11 U.S.C. § 362.  28 U.S.C. § 157(b); Fed. R. Bankr. P. 7001.

District courts generally have jurisdiction to consider appeals from certain decisions of bankruptcy courts, including appeals from dismissal of adversary proceedings, 28 U.S.C. § 158(a), and they have jurisdiction to determine their jurisdiction.  *See United States v. Ruiz*, 536 U.S. 622, 628 (2002).

However, the District Court did not have jurisdiction to consider the District Court Appeal.  That jurisdiction extends only to an appeal that an appellant files either within fourteen days after entry of the order being appealed or, "[i]f one party files a timely notice of appeal, . . . within 14 days after the date when the first notice was filed."  11 U.S.C. § 158(c)(2); Fed. R. Bankr. P. 8002(a).  U Lock filed its notice of appeal to the District Court on September 6, 2022, A006[1] at #1, A011 at #20, A253-55, which was twenty-seven days after the Bankruptcy Court dismissed the Adversary Proceeding.  *See* A010 at #5.

Although Shanni Snyder, who has entered an appearance here as an appellee, filed an August 23, 2022 notice of appeal to the District Court from that same August 10, 2022 order of the Bankruptcy Court, A010 at #6, A251-52, she was never a party to the Adversary Proceeding.  Instead, she was only the filer of an unsuccessful motion to intervene in that proceeding.  A010 at ##3, 4.

---

[1] References in this brief to A--- are to the correspondingly numbered page of the Appendix that U Lock filed with this Court on March 27, 2024 as part of Document 24 and all of Document 25.

This Court has jurisdiction to review the District Court's June 21, 2023 Order of Court that affirmed the decision of Bankruptcy Court.  28 U.S.C. §§ 158(d), 1291.  That Order disposed of all of the issues that were before that court.  U Lock filed its notice of appeal from that decision on July 18, 2023, which was fewer than thirty days after the District Court entered its order.  *See* 28 U.S.C. § 2107(a); Fed. R. App. P. 4(a)(1)(A).

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Whether the District Court should have dismissed U Lock's appeal to that court, which U Lock filed more than fourteen days after the Bankruptcy Court entered its order dismissing U Lock's Adversary Proceeding but within fourteen days after a person whose motion to intervene in that adversary proceeding had been denied by the Bankruptcy Court had filed a notice of appeal.

2. Whether, the Bankruptcy Court properly held that a debtor under Chapter 7 of the Bankruptcy Code for whom the Bankruptcy Court had appointed a trustee could not itself bring an adversary proceeding alleging violation of the automatic stay of 11 U.S.C. § 362(k).

3. Whether the Bankruptcy Court acted correctly in dismissing an adversary proceeding brought by a debtor pursuant to Chapter 7 of the Bankruptcy Code, which alleged violation of the automatic stay of 11 U.S.C. § 362(k), after the debtor's trustee stated that it had no interest in pursuing the debtor's purported claim.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

U Lock's "Statement of Related Cases and Proceedings," see U Lock Brief at pp. 1 2, is by no means complete:

- No. 24-1202 in this Court is Snyder's appeal from the decision of the Bankruptcy Court to dismiss her adversary proceeding against Christine Biros in which Snyder attempted to assert claims for improper preferences pursuant to 11 U.S.C. §§ 547 and 550 and for fraudulent conveyances or transfers under 11 U.S.C. 544, 548, and 550 and Pennsylvania law and the District Court's affirmance of that decision. Snyder is represented by counsel in that appeal.

- By order of February 5, 2024, this Court consolidated this appeal with Snyder's appeal at No. 24-1202 "for purposes of disposition only." Docket Entry No. 16.

- Snyder is also the appellant in this Court at No. 24-1282. Approximately three weeks before U Lock filed its brief here, the District Court denied Snyder's counseled motion to withdraw the reference to the Bankruptcy Court of Biros's objections to Snyder's claim in the U Lock Bankruptcy Case.

5

Subsequent to U Lock's filing its brief with this Court in this appeal, the District Court denied Snyder's pro se motion for reconsideration of its order. Snyder, pro se, appealed the District Court's denials to this Court.

- Snyder's appeal from the February 29, 2024 decision of the Bankruptcy Court disallowing her claim in the U Lock Bankruptcy Case is pending before the District Court at Case 2:24-cv-00478-NBF.

In addition, Snyder's brother, George Snyder, is (a) the appellant in this Court at No. 24-1163 from the decisions of the District Court and the Bankruptcy Court to disallow his claims in the U Lock Bankruptcy Case and (b) the appellant in the District Court at Case 2:24-cv-00135-CB from the decision of the Bankruptcy Court to approve a settlement between Biros and the Trustee that resolved some of Biros's claims in the U Lock Bankruptcy Case.

## CONCISE STATEMENT OF THE CASE

### A. The State-Court Ownership Action

In 2017, Biros filed a civil action (the "State-Court Ownership Action") in the Court of Common Pleas of Westmoreland County, Pennsylvania (the "State Court") against U Lock and the executors of four estates (the "Four Executors").  A027, A035.  Biros claimed that she was the equitable owner of real property (the "Subject Property") at 14140 Route 30 in North Huntingdon Township in Westmoreland County.  A027.  The four estates and their decedents had owned the Subject Property prior to 2015.  A027.

Immediately before trial of the State-Court Ownership Action in 2019, the State Court released the Four Executors in exchange for promises to issue corrective deeds to the Subject Property to the prevailing party.  A027.

The State Court found after trial that Biros owned the Subject Property and was entitled to equitable relief.  That court concluded that, even though U Lock had held possession of the Subject Property since 2015, it had done so in a constructive trust for Biros.  That court directed formal conveyance of the Subject Property to Biros.  A031-32.

7

The Superior Court of Pennsylvania affirmed the State Court's judgment on May 21, 2021. *See Biros v. U Lock Inc.*, 255 A.3d 489 (Pa. Super. Ct. 2021). *See also* A057. That court denied U Lock's application for reargument on July 28, 2021. A058.

On January 19, 2022, the Supreme Court of Pennsylvania denied U Lock's petition to that court for allowance of appeal. *See Biros v. U Lock Inc.*, 271 A.3d 875 (Pa. 2022). *See also* A062.

The following day, January 20, 2022, the State Court entered an order releasing to Biros the Four Executors' deeds to the Subject Property. A063. Biros recorded those deeds with the Westmoreland County, Pennsylvania Recorder of Deeds on or about January 25, 2022. *See, e.g.*, A064-70.

On March 16, 2022, the Supreme Court of Pennsylvania granted U Lock's application to stay remand of the record in the State-Court Ownership Action while U Lock sought review in the United States Supreme Court. A062.

U Lock *never* sought review in the United States Supreme Court. A117, A062.

On March 17, 2022, U Lock filed a petition in the State-Court Ownership Action to strike the State Court's January 20, 2022 order directing delivery to Biros of the Four Executors' deeds for the Subject Property.  A038.

On April 22, 2022 – a Friday – the State Court conducted a hearing on U Lock's motion.  A108.  That court asked U Lock's counsel, who also represents U Lock here, to provide support for his client's position:

> THE COURT: . . . . Mr. Roth, we are back to you then. After the denial of your appeal by the Pennsylvania Supreme Court and your position -- *I am trying to wrap myself around the argument why I do not have jurisdiction at that point in time to release the deeds* which is the last component of the Common Pleas court case because you had leave to file for certiorari to try to establish a U.S. Supreme Court issue related to this case but you did not even go to that measure to do it so why would I vacate this order at this time? *If you can connect all that together for me and explain it I am certainly available to take all of this under advisement and proceed accordingly.*

> MR. ROTH: It was our belief that until they remand the case to here that you did not have jurisdiction. That was our belief. That is why we filed –

> THE COURT: They did not remand it here because you requested that they held the record and stay the record's transmission. That does not stop their denial which they denied. They did not grant you the appeal. So then do I -- *I guess my question is do you have any precedent law that would indicate then that the Common Pleas court then could not close any remaining legal loop holes that are still out there and are not*

>*completed because you exhausted all of your appeals* through the
>Commonwealth of Pennsylvania?
>
>MR. ROTH: I understand that. Could I have one moment to
>consult with someone from U-lock?

A120-21 (emphases added).  When that court announced that it would

take the matters before it, including U Lock's motion, under

advisement, Roth responded, "My client is asking what the timeframe is

for --."  A147.

### B. The Involuntary Petition and Subsequent Events

On April 27, 2022, which was the Wednesday following the State

Court's April 22, 2022 hearing on U Lock's motion, Snyder commenced

the U Lock Bankruptcy Case by filing an involuntary petition (the

"Involuntary Petition") under Chapter 7 of the Bankruptcy Code,

11 U.S.C. §§ 701 *et seq.*, in the Bankruptcy Court.  A256-58.  The

Bankruptcy Court docketed the U Lock Bankruptcy Case at

Case 22-20823-GLT.  *See* A259.

In the Involuntary Petition, Snyder asserted that she had a claim

against U Lock for $375,100.00.  She relied on a judgment that the

District Court had previously entered in her favor and against U Lock.

A258.[2]

Through the remainder of April 2022 and into May 2022, the

State Court continued to rule on remaining issues in the State-Court

Ownership Action.  A038.

On May 17, 2022, the State Court entered an order, dated May 13,

2022, that directed the Westmoreland County Prothonotary to issue a

writ of possession for the Subject Property to Biros.  A150.  That court

---

[2] The Bankruptcy Court conducted an evidentiary hearing on Snyder's claim in July 2023 and, during the pendency of this appeal, disallowed that claim:

> In ten years, the Court has never held a stronger conviction that a fraud was perpetrated upon the court as it is following an evidentiary hearing on Shanni Snyder's claim. Ms. Snyder obtained a default judgment under the Fair Labor Standards Act ("FLSA") by swearing that debtor U Lock, Inc. employed her to monitor security cameras for ten hours a day, every day, for four years without paying wages. *She lied.* First to the federal district court who awarded the judgment, and then to this Court by commencing an involuntary petition against U Lock based on a fraudulent claim. Ms. Snyder did so to frustrate creditor Christine Biros' efforts to gain control of U Lock's business premises ("Property"), which was awarded to Ms. Biros by final state court orders.

*In re U Lock*, Case No. 22-20823-GLT, 2024 Bankr. LEXIS 484, at *1 (Bankr. W.D. Pa. Feb. 29, 2024) (emphasis in original, footnotes omitted).  As noted above, Snyder's appeal from this disallowance of her claim is pending before the District Court.

also entered an order that denied U Lock's motion to strike the January 20, 2022 order that had directed delivery to Biros of the Four Executors' deeds to the Subject Property. A152-53.

On May 18, 2022, counsel for Biros wrote to the State Court, mentioned the pendency of the U Lock Bankruptcy Case, and stated that, although he understood that the automatic bankruptcy stay was in place as to U Lock, he hoped to proceed with a hearing scheduled in the State-Court Ownership Action for May 20, 2022 on Biros's motion for sanctions against persons affiliated with U Lock. A154-55.

On May 19, 2022, J. Allen Roth, the attorney representing U Lock in this appeal, filed a notice in the State-Court Ownership Action about the pendency of the U Lock Bankruptcy Case.[3] A037, A165.

On that same date, U Lock filed a "Motion to Correct and/or Strike Erroneous Caption" in the State-Court Ownership Action A038.

---

[3] While U Lock correctly states that, in an early filing in the U Lock Bankruptcy Case, Biros asserted that Snyder filed a suggestion of U Lock's bankruptcy with the State Court on May 12, 2022, U Lock Brief at p.7, the docket of the matter before the State Court does not indicate any notice prior to U Lock's May 19, 2022 filing. *See* A037-38. For whatever it may be worth, Snyder did not, in her motion to intervene in the Adversary Proceeding, claim to have provided that notice to the State Court. A242-45.

The State Court held its scheduled hearing in the State-Court
Ownership Action on May 20, 2022.  A157-81.  Roth appeared for
U Lock.  A157.  The State Court addressed U Lock's newly filed motion
concerning the caption, A159-61, and other matters.  A157-81.

Following this hearing, counsel for Biros wrote a May 24, 2022
letter to the State Court about possession of the Subject Property.
A187-88.  He also sent a June 1, 2022 letter to that court that reported
statements to the Bankruptcy Court by Snyder, Roth, and one of
U Lock's officers.  A189-235.

The State Court did not enter any orders after May 17, 2022 that
were relevant to any issue in this appeal.[4]  A036-38.

On June 17, 2022, the Bankruptcy Court entered an Order for
Relief Under Chapter 7 and appointed an interim trustee for U Lock.
A300-03.  The Bankruptcy Court appointed a different interim trustee
(the "Trustee") by order of June 22, 2022.  A304-05.

---

[4] On May 24 and June 29, 2022, the State Court entered orders
pursuant to Pa. R. App. P. 1925(a) that directed Snyder and another
person, also not a party to the Adversary Proceeding, to file statements
of the matters about which they intended to complain in their post-
petition appeals to the Superior Court of Pennsylvania.  A036, 037.

On September 1, 2022, the Bankruptcy Court entered an order voiding the State Court's May 17, 2022 order concerning Biros's request for a writ of possession for the Subject Property.  In issuing that order, the Bankruptcy Court declined to annul the bankruptcy stay retroactively. [5]  A414-15.

No one has ever filed a claim in the U Lock Bankruptcy Case for any work that Roth or anybody else claims to have performed on post-petition work on the State-Court Ownership Action.

### C. The Adversary Proceeding in the Bankruptcy Court

U Lock, represented by Roth, commenced the Adversary Proceeding by filing its complaint in the Bankruptcy Court on August 1, 2022.  A009 at #1, A015-241.  U Lock's only claimed count was for violation of the stay created by 11 U.S.C. § 362.  A024.

In the Adversary Proceeding, U Lock sought to recover damages for itself.  A025 (demanding "judgment in its favor" and damages).  U Lock claimed to have suffered those damages in prosecuting and protecting interests in the Subject Property.  Notably, it attacked the

---

[5] The Bankruptcy Court has since entered orders allowing Biros to take possession of the Subject Property.

14

State Court's May 13, 2022 order granting to Biros the possession of the Subject Property, A020 at ¶ 38, A025 at "a"; the State Court's post-petition hearings in the State-Court Ownership Action, A021-23 at ¶¶ 41-48, A025 at "b," "d"-"e"; and the correspondence of Biros (through counsel) to the State Court, A020-21 at ¶ 39; A023 at ¶ 49, A024 at ¶ 50, A025 at "c," "f"-"g."

Snyder moved three days later, on August 4, 2022, to intervene in the Adversary Proceeding.  A010 at 3, A242-49.  She alleged that she had suffered cognizable emotional damages from statements that Biros's counsel and the State Court judge had made about her at the April 22, 2022 pre-petition hearing in State Court.  A243 at ¶¶ 3-4.  She added that she had been "mentioned several times" at the State Court's May 20, 2022 hearing.  A244 at ¶ 8.  She also asserted that she had a stay-related claim against Biros as a creditor of U Lock.  A244 at ¶¶ 10-13.

### D. The August 9 Hearing and the August 10 Orders

The Bankruptcy Court announced at its hearing of August 9, 2022 that it intended to dismiss the Adversary Proceeding.  It began by noting, "I thought it was pretty clear at the last hearing that the

Trustee stands in the shoes of U LOCK. So, it is only the Trustee who can bring that adversary at this point." A382.

Roth, for U Lock, stated, "if the Trustee is not going along with it, then I guess we're kind of stuck with it." A382.

When Roth answered a question from the bench by stating that he had not discussed the Adversary Proceeding with U Lock's Trustee, the court observed that Roth's filing the Adversary Proceeding without the Trustee's agreement was, itself, a violation of the automatic stay. A383.

The Trustee contradicted Roth's statement to the Bankruptcy Court, advising, "Well, I've read what he wrote and I called Mr. Roth and told him to withdraw it, Your Honor." A383. The Trustee added that, if anyone wanted to pursue the claims that U Lock had attempted to assert in the Adversary Proceeding, "they can buy them from me." A383.[6]

---

[6] The Bankruptcy Court also established that the trustee in Snyder's then-pending proceeding under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 1301 *et seq.*, **had not** authorized Snyder to pursue any claims against Biros. A385.

The Trustee made clear that he had no intention of pursuing claims against Biros for any alleged violation of the automatic stay. A383-84.

The Court set forth its intentions:

> All right. Let me hear – let me ask this at this point. At this point, I'm inclined to just outright deny Adversary 22-2048, which is the stay violation brought by U LOCK because it was not pursued by the Chapter 7 Trustee on behalf of the U LOCK estate. *So, any reason why I should keep that adversary on my calendar at this point, Mr. Roth?*
>
> MR. ROTH: *No. No, Your Honor.*
>
> THE COURT: All right. Very well. Then I'm going to deny that adversary, and commensurate with that I will deny the motion to intervene that was filed by Ms. Snyder.

A388 (emphases added).

The following day, August 10, 2022, the Bankruptcy Court entered a text order that dismissed the Adversary Proceeding without prejudice. A010 at #5. At the same time, that court entered a text order denying Snyder's motion to intervene without prejudice "as the underlying adversary is DISMISSED." A010 at #4.

Although the Bankruptcy Court expressly entered these orders "without prejudice," neither U Lock nor Snyder ever attempted to reassert a stay-related claim against Biros.

17

## E. The District Court Appeal

Snyder filed an appeal to the District Court from the Bankruptcy Court's August 10 orders on August 23, 2022. A010 at #6, A251-52. The District Court docketed Snyder's appeal at Case 2:22-cv-0122. A011 at #11.

U Lock filed its "cross-appeal" from the Bankruptcy Court's order dismissing its case on September 6, 2022. A011 at #20, A253-55. The District Court docketed U Lock's appeal at Case 2:22-cv-01284. A012 at #25.

In U Lock's appeal, each of U Lock, Snyder, and Biros filed briefs with the District Court. A007 at #15, A008 at ##19, 21.

During the District Court's consideration of those appeals, the Bankruptcy Court entered an order approving Snyder's purchase of certain assets of U Lock from the U Lock bankruptcy estate (the "Bankruptcy Estate" or the "Estate"). *See generally* A432-42. In its order, the Bankruptcy Court identified the "intangible assets" that Snyder was authorized to purchase:

> all right, title, and interest in any and all claims, claims for relief, and causes of action *that the Debtor, its bankruptcy estate, and/or the trustee may have had as of the petition date of April 27, 2022*, including any actions under 11 U.S.C. §§ 544,

18

547, 548, and any other provision of the Bankruptcy Code, state law, or common law, including any such claims, claims for relief, and causes of action relating to the real property located at 14140 Route 30, North Huntingdon, Pennsylvania ("Real Property"), or any other real or personal property, business, activity, unpaid rents owed to the Debtor, and all intellectual property of the Debtor.

A433-34 (emphasis added).

The Bankruptcy Court did not identify any post-petition claims or any other claims or causes of action in its delineation of the "Purchased Assets," *see* A433-34, and it expressly limited its authorization to the sale of only the defined "Purchased Assets." A436.[7]

In the District Court's June 21, 2023 "Order of Court" captioned for both U Lock's appeal and Snyder's appeal, that court affirmed the Bankruptcy Court's orders. A002-04. It held that neither U Lock Inc. nor Snyder had demonstrated "that Judge Taddonio committed legal error nor abused his discretion in dismissing the Adversary Complaint,

---

[7] U Lock is correct that, prior to Snyder's acquisition of the "Purchased Assets," the Trustee sought leave of the Bankruptcy Court to sell Biros a broader range of assets, including "all tangible and intangible personal Property of the Estate (as defined in [11 U.S.C.] §541)." A419; *see* U Lock Brief at p.17. That proposed sale to Biros never happened, and the Bankruptcy Court never approved any broader sale of assets, whether to Biros, to Snyder, or to anybody else.

19

without prejudice, and denying Snyder's motion to intervene, as moot." A003-04.

The District Court added that U Lock had conceded that only the trustee of the Bankruptcy Estate had authority to bring any claims that the Estate may have had against Biros. A003-04. It looked to this Court's decision in *In re Imerys Talc America, Inc.*, 38 F.4th 361, 370 (3d Cir. 2022) and held that, by agreeing with the Bankruptcy Court's statements about standing, U Lock had waived any objection to the Bankruptcy Court's conclusion that only U Lock's trustee, and not the company itself, could pursue a claim for violation of the stay. A003-04.

## F. This Appeal

On July 18, 2023, U Lock filed a notice of appeal to this Court from the decision of the District Court. A001, A008 at #25, A013-14 at #39.

Snyder has never appealed to this Court from that decision. *See* A008, A013-14.

As noted above, this Court has consolidated this appeal with Snyder's appeal at No. 24-1202 "for purposes of disposition only." Docket Entry No. 16.

## SUMMARY OF ARGUMENT

This Court should dismiss this appeal and remand this matter to the District Court with directions to dismiss U Lock's appeal to it. The District Court had no jurisdiction over that appeal because U Lock did not file it within the jurisdictional time limits established by the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. The statute and the rule require that an appeal be filed within fourteen days of entry of the order from which the appeal is taken, and U Lock filed its appeal twenty-seven days after the Bankruptcy Court dismissed the Adversary Proceeding.

U Lock gets no benefit from Snyder's having filed an appeal to the District Court. While the statute and the rule allow additional time only after another party's appeal, Snyder, as an unsuccessful would-be intervenor, never became a party to the Adversary Proceeding.

Even if U Lock had filed a timely appeal, it would be entitled to no relief here. It seeks damages for alleged violations of the automatic stay. However, upon Snyder's filing the Involuntary Petition, any interest that U Lock may have had in the Subject Property transferred to the Bankruptcy Estate. U Lock therefore could not be damaged by

21

any post-petition events in the State-Court Ownership Action, and it had no reason to participate in that case. Accordingly, U Lock had no standing to pursue the Adversary Proceeding, and its attempting to sue Biros usurped and interfered with the Trustee's performance of his statutory obligations.

In addition, as the District Court noted, U Lock waived the arguments it tries to make here. When the Bankruptcy Court advised U Lock of its concerns with the Adversary Proceeding, U Lock raised no substantial objection to that Court's taking that action.

Once the Bankruptcy Court correctly determined that U Lock could not maintain the Adversary Proceeding, its only appropriate course was to dismiss U Lock's complaint. The Trustee had no interest in pursuing the purported claims arising from the stay. Snyder had no claim to the damages that U Lock claimed to have suffered, and her pursuing those claims would have been as much an interference with the Trustee's powers as U Lock's would have been.

Therefore, if this Court does not dismiss this appeal, it should affirm the decisions of the Bankruptcy Court and the District Court below.

## ARGUMENT

### A. This Court Should Dismiss This Appeal Because U Lock's Appeal to the District Court Was Untimely.

#### 1. *The Standard of Review*

The authority of this Court includes reviewing whether the District Court properly exercised jurisdiction over U Lock's appeal to it. *See In re Caterbone*, 640 F.3d 108, 111 (3d Cir. 2011). "Whether subject matter jurisdiction exists is a question of law requiring de novo review." *Nuveen Municipal Trust v. Withumsmith Brown, P.C.*, 692 F.3d 283, 293 (3d Cir. 2012) (citing *W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*, 591 F.3d 164, 170 n.7 (3d Cir. 2009)). "This is the case even where . . . a district court 'exercis[es its] jurisdiction' and dismisses a cause of action for some other reason." *Caterbone*, 640 F.3d at 111 (quoting *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 163 (3d Cir. 2010)).

#### 2. *U Lock Was Late in Filing Its Appeal to the District Court.*

Rule 8002(a) of the Federal Rules of Bankruptcy Procedure establishes the deadline by which to appeal a decision of a bankruptcy court to a district court:

23

(a) In General.

> (1) Fourteen-Day Period. Except as provided in subdivisions (b) and (c), a notice of appeal must be filed with the bankruptcy clerk within 14 days after entry of the judgment, order, or decree being appealed.
>
> *****
>
> (3) Multiple Appeals. ***If one party files a timely notice of appeal,*** any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise allowed by this rule, whichever period ends later.

(emphasis added).[8]

The Bankruptcy Code incorporates this timing requirement, providing, "An appeal under subsections (a) and (b) of this section shall be taken . . . in the time provided by Rule 8002 of the Bankruptcy Rules."   28 U.S.C. § 158(c)(2).

Because of this statutory incorporation of Rule 8002, this timing deadline is "jurisdictional and non-waivable."  *Caterbone*, 640 F.3d at 112.  A failure to adhere to this requirement "bars a party from relying on forfeiture or waiver to excuse a lack of compliance with the

---

[8] Fed. R. App. P. 4(a) includes similar provisions governing the time for appeal from a district court to a court of appeals but provides periods of thirty days rather than fourteen days.

statute's time limitations." *Id.* (cleaned up) (citing *Bowles v. Russell*, 551 U.S. 205, 213 (2007)).[9]

U Lock did not file its notice of appeal to the District Court within fourteen days of the Bankruptcy Court's order, and the District Court

_____

[9] The Supreme Court's recent decision in *Harrow v. Department of Defense*, No. 23-21, 2024 U.S. LEXIS 2171 (May 16, 2024) does not change the outcome here. While the *Harrow* Court announced a general rule that, in the absence of a clear statement, time limitations in most statutes should be construed as "claim processing rules" rather than as limitations on the jurisdiction of the reviewing Article III court, 28 U.S.C. § 158(c)(2) provides a clear statement. It states that appeals from the bankruptcy courts to the district courts "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts" – a manner in which timeliness remains jurisdictional. *Id.* at *14. Section 158(c)(2) also expressly invokes Fed. R. Bank. P. 8002, which has the same structure as to timeliness as Fed. R. App. P. 4.

Moreover, the *Harrow* Court recognized that its holding in *Bowles* "governs statutory deadlines to appeal 'from one Article III court to another.'" 2024 U.S. LEXIS 2171 at *14 (quoting *Hamer v. Neighborhood Housing Servs. of Chicago*, 583 U. S. 17, 25 (2017)). The Bankruptcy Court is vastly closer to an Article III court than is, for instance, the Merit System Protection Board (the "MSPB") that was involved in Harrow. The Bankruptcy Court is "a unit of the district court." *See* 28 U.S.C. § 151. In noting that the bankruptcy courts are "are subject to control by the Article III courts," the Supreme Court has looked to the manner in which bankruptcy judges are appointed under 28 U.S.C. § 152 and to the fact that, under 28 U.S.C. § 157, the district courts refer all matters to the bankruptcy courts and may withdraw a reference. *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 655, 679-81 (2015). None of these characteristics are true of the MSPB. *See* 5 U.S.C. § 7701.

therefore lacked jurisdiction over U Lock's appeal. The Bankruptcy Court dismissed the Adversary Proceeding by order of August 10, 2022. A010 at #5. The fourteenth day following the entry of that order was August 24, 2022. U Lock did not file its notice of appeal by that date. *See generally* A010-11. In fact, it did not file that notice until September 6, which was the twenty-seventh day after the entry of that order. A011 at #20. The district court should have dismissed U Lock's appeal.

U Lock did not buy extra time in which to take an appeal when Snyder took her appeal. Rule 8002(a) only grants that extra time when a "party" appeals. As the filer of an unsuccessful motion to intervene, A010 at ##3,4, Snyder never became a party to the Adversary Proceeding. *See Seneca Resources Corp. v. Township of Highland*, 863 F.3d 245, 259 (3d Cir. 2017) (holding that person or entity not permitted to intervene in an action does not become a party to that action). Nothing changes the conclusion that U Lock's appeal to the District Court was untimely.

### 3. This Court Should Dismiss This Appeal and Remand to the District Court with Directions to Vacate and Dismiss.

This Court has explained – and applied – the appropriate remedy when it determines that an appeal from a bankruptcy court to a district court was untimely:

> If our independent review yields the conclusion that the District Court lacked subject matter jurisdiction over an appeal from the Bankruptcy Court, the appropriate disposition is dismissal of the appeal. *In re Caribbean Tubular Corp.*, 813 F.2d 533, 535 (1st Cir. 1987) (holding that where it is found that a district court lacked appellate jurisdiction over a bankruptcy court order, the court of appeals must dismiss the appeal to it, and remand to the district court with instructions to vacate its order and to dismiss the appeal from the bankruptcy court).

*Caterbone*, 640 F.3d at 111; see also *id.* at 114 (applying remedy).

The application of this rule here is clear. U Lock's appeal to the District Court was untimely, and that court was therefore without jurisdiction to consider that appeal on the merits. Accordingly, this Court should dismiss this appeal and remand this matter to the District Court with directions to vacate its decision affirming the order of the Bankruptcy Court and to dismiss U Lock's appeal.

## B. U Lock Could Not Bring or Maintain the Adversary Proceeding.

### 1.    *The Standard of Review*

"Like the District Court," this Court "review[s] the Bankruptcy Court's legal determinations de novo and its factual findings for clear error." *Phoenician Mediterranean Villa, LLC v. Swope (In re J & S Properties, LLC)*, 872 F.3d 138, 142 (3d Cir. 2017) (citing *In re VistaCare Grp., LLC*, 678 F.3d 218, 224 (3d Cir. 2012)).

A plaintiff's standing to make a claim is a requirement for subject-matter jurisdiction. *New Jersey Bankers Association v. Attorney General New Jersey*, 49 F.4th 849, 855 (3d Cir. 2022); *see Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 438 (2017). The standing to make a claim requires both standing under Article III of the U.S. Constitution and prudential standing. *Potter v. Cozen & O'Connor*, 46 F.4th 148, 154 (3d Cir. 2022).

The requirements for Article III standing are familiar:

> To invoke the jurisdiction of a federal court, a plaintiff must meet the "irreducible constitutional minimum" of Article III standing by establishing three elements: that she has suffered an "injury in fact" which is "concrete and particularized" and "actual or imminent"; that the injury is "fairly traceable to the challenged action of the defendant"; and that it is likely "that the injury will be redressed by a favorable decision."

*Potter*, 46 F.4th at 154 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

This Court has explained that prudential standing "demands that 'the plaintiff generally . . . assert his own legal rights and interests, and []not rest his claim to relief on the legal rights or interests of third parties.'" *Majestic Star Casino, LLC v. Barden Dev., Inc. (In re Majestic Star Casino, LLC)*, 716 F.3d 736, 748 (3d Cir. 2013) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

This Court has directed that whether a plaintiff has prudential standing to bring its claims should be addressed as a question of whether a complaint states a claim on which relief can be granted rather than as a question of subject matter jurisdiction. *Potter*, 46 F.4th at 154-55.

As to standing generally, this Court "consider[s] whether the complaint 'contain[s] sufficient factual matter that would establish standing if accepted as true.'" *Potter*, 46 F.4th at 153 (quoting *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017)).

### 2.    At the Time of the Alleged Events About Which U Lock Complains, U Lock Had No Interest in the Subject Property.

On its merits, U Lock's complaint in the Adversary Proceeding deserved no better than perfunctory rejection. At the time of all the alleged events about which U Lock complained, U Lock had no interest at all in the Subject Property.

The Supreme Court has recently explained the effect of the commencement of a bankruptcy case on the control of a debtor's property:

> Under the Bankruptcy Code, the filing of a bankruptcy petition has certain immediate consequences. For one thing, a petition "creates an estate" that, with some exceptions, comprises "***all legal or equitable interests of the debtor in property as of the commencement of the case***." §541(a)(1). Section 541 "is intended to include in the estate any property made available to the estate by other provisions of the Bankruptcy Code."

*City of Chicago v. Fulton*, 141 S. Ct. 585, 589 (2021) (emphasis added, quoting *United States v. Whiting Pools, Inc.*, 462 U. S. 198, 205 (1983)). *See also In re VistaCare*, 678 F.3d at 228 ("Upon the filing of a bankruptcy petition, a bankruptcy estate is created, which consists of, with certain exceptions, all of the debtor's legal or equitable interests in property, wherever located and by whomever held."). As this Court has

explained, with limited exceptions,[10] "the estate encompasses everything that the debtor owns upon filing a petition, as well as any derivative rights, such as property interests the estate acquires after the case commences." *O'Dowd v. Trueger (In re O'Dowd)*, 233 F.3d 197, 202 (3d Cir. 2000).

Section 541 makes clear that this rule applies even when a bankruptcy case is commenced by the filing of an involuntary petition. 11 U.S.C. § 541(a) (citing *id.* at § 303).

Accordingly, at the moment that Snyder filed the Involuntary Petition on April 27, 2022, A256-58, all of U Lock's property – including any interest that it may still have had in the Subject Property – transferred from U Lock to the Bankruptcy Estate.

Despite the clear application of this rule to this situation, U Lock's Adversary Proceeding complaint alleged *only* events that occurred in May and June of 2022 – *i.e.*, after Snyder filed the Involuntary Petition. These occurrences included State Court orders and hearings in May, A020-23, and correspondence that Biros's counsel sent in May and early

---

[10] Those exceptions are of no moment here. *See* 11 U.S.C. § 541(a), (b), & (c)(2).

June, A020-21, A023, A024.  All of them could only have taken place *after* Snyder filed the Involuntary Petition.

U Lock underscored the impropriety of the Adversary Proceeding by seeking relief for itself, rather than for the Bankruptcy Estate.  In its request for relief, U Lock "demand[ed] that this Court enter judgment in its favor . . . for actual damages, compensatory damages, punitive damages, and reasonable attorney's fees."  A025.

By contrast, U Lock makes no claim that the Bankruptcy Estate should recover *any* amount for damages the Estate may have suffered as the result of Biros's claimed actions.  A025.  In fact, U Lock makes no claim that the Estate has suffered any actual damages.  U Lock does not even assert that it, Roth,[11] or anyone else has made a claim against the Estate for time, effort or costs allegedly expended in some odd defense of the Estate's interests.

---

[11] Of course, Roth would face the additional hurdle that, even though he claims to have provided post-petition legal services, he has never sought the approval of the Bankruptcy Court to serve as a professional person to the Bankruptcy Estate pursuant to 11 U.S.C. § 327.  Even if Roth had sought that approval, he could not have met that section's requirements that a professional person be "disinterested" and "not hold or represent an interest adverse to the estate."

Making the Adversary Proceeding even more mysterious, U Lock simply had no interests to protect when it chose to participate in post-Involuntary Petition proceedings before the State Court to "respond to hearings, prepare defenses, file appeals, purchase transcripts, and incur *post-stay* attorney fees." *See* A024 at ¶ 55.  After Snyder filed the Involuntary Petition, U Lock had no interest in the Subject Property that it could possibly "defen[d]."  Given this absence of any interest that could have been preserved, U Lock cannot argue that Biros's alleged actions reasonably *caused* U Lock to do any of the things it claims to have done.

U Lock's various claims for declaratory relief are even more odd. Not only do all of U Lock's requested declarations relate to time periods *after* Snyder filed the Involuntary Petition, A025, but, by the time that U Lock filed its complaint requesting that type of relief on August 1, 2022, the Trustee had been in place for almost six weeks.  A304.  There is no reasonable way in which U Lock could have thought that it, rather than the Bankruptcy Estate, could have benefited from the requested declaration.  There is no reasonable dispute that, had the Trustee

33

wanted to bring those claims on behalf of the Estate, he could have done so.

Moreover, U Lock's bringing the Adversary Proceeding after the Bankruptcy Court appointed the Trustee "usurp[ed] the power of a Trustee and [took] possession of an estate asset." A383. "[T]he trustee serves a 'unique role' in Chapter 7." *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 338 F.3d 548, 560 (3d Cir. 2003) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 7 (2000)). The Bankruptcy Code sets forth the duties that this role includes:

> (a)The trustee shall—
>
>> (1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest;
>> (2) be accountable for all property received;
>> *****

11 U.S.C. § 704(a). No provision of Chapter 7 assigns these duties to collect and account for property to a debtor or, for that matter, to anybody else.

Despite this clear authorization to the Trustee and the absence of any authorization to anybody else, U Lock attempted in the Adversary

proceeding to pursue claims that should only have benefited the property of the Bankruptcy Estate. [12]

U Lock's reliance on this Court's decisions in *Healthcare Real Estate Partners, LLC v. Summit Healthcare REIT, Inc. (In re Healthcare Real Estate Partners, LLC)*, 941 F.3d 64 (3d Cir. 2019) and *Cuffee v. Atlantic Bus. & Cmty. Dev. Corp. (In re Atlantic Bus. & Cmty. Corp.)*, 901 F.2d 325 (3d Cir. 1990), is difficult to fathom.  In *Healthcare Real Estate Partners*, the "debtor" was actually a "former debtor" by the time it filed its claim for violation of the automatic stay.  Prior to the plaintiff's filing its claim against the petitioning creditors, the bankruptcy court had vacated its order for relief *and* the petitioning creditors had subsequently moved to voluntarily dismiss the bankruptcy case.  941 F.3d at 67-68.  The bankruptcy court had granted the latter motion subject to the plaintiff's right to bring certain actions. *Id.*

---

[12] It is no surprise that the Bankruptcy Court noted Roth, as counsel for U Lock, "may have violated the stay by taking possession of an asset and trying to pursue a claim on behalf of U LOCK where there is a Chapter 7 trustee involved."  A384.

Worse still for U Lock, in *Cuffee*, a trustee appears to have controlled the debtor's decisions about both litigation, including potential violations of the automatic stay, and business. *See* 901 F.2d at 326 ("As a result of these actions, the trustee filed . . ."), 327 ("[T]he trustee ordered . . . . The trustee claimed . . . ."). The non-debtor defendant appealed the bankruptcy court's order to the district court, *id.* at 327, and, presumably, identified the parties to that appeal. This decision gives no support for the contention that a Chapter 7 debtor for whom a trustee has been appointed can bring a claim under § 362(k) to vindicate claimed rights of the bankruptcy estate. In fact, *Cuffee* argues for, rather than against, the Bankruptcy Court's dismissal here.[13]

Finally, this is not a situation in which U Lock might have had third-party standing to assert rights of the Bankruptcy Estate. The requirements for that type of standing include "1) the plaintiff must suffer injury; 2) the plaintiff and the third party must have a 'close

---

[13] U Lock also cites to other decision involving claims by Chapter 7 individual (rather than business) debtors that were typically asserted after discharge dates, asserted after the trustees had abandoned the claims, or were within the debtors' claimed personal exemptions. *See* U Lock Brief at pp. 23-24.

relationship'; and 3) the third party must face some obstacles that prevent it from pursuing its own claims." *Majestic Star Casino*, 716 F.3d at 749 (quoting *Eisenstadt v. Baird*, 405 U.S. 438, 443-46 (1972)). U Lock fails at least two of these tests. It has not been injured, and nothing prevented the Trustee from pursuing any claims that the Bankruptcy Estate may have had. As U Lock had no basis on which it could bring the claims it attempted and no claims of its own to assert, the Bankruptcy Court was correct to dismiss the Adversary Proceeding. This Court should affirm that decision.

### 3  U Lock Waived Any Objection to the Bankruptcy Court's Determination About Lack of Capacity.

In *Imerys Talc Am.*, to which the District Court looked in determining that U Lock had waived its objections to the arguments contesting its standing to maintain the Adversary Proceeding, A004, this Court explained the relevant standard for waiver:

> An argument is waived where a party fails to "adequately raise it" with a "minimum level of thoroughness" in the lower court. *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 262 (3d Cir. 2009); *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 834-35, 54 V.I. 948 (3d Cir. 2011). And in bankruptcy appeals, avoiding a waiver determination at the district court or appellate court requires a party to have properly brought the argument before the bankruptcy court. *In re Trib. Media Co.*, 902 F.3d 384, 400 (3d Cir. 2018) (citing *Buncher Co. v. Off. Comm. of Unsecured*

*Creditors of GenFarm Ltd. P'ship IV*, 229 F.3d 245, 253 (3d Cir. 2000)).

*Imerys Talc*, 38 F.4th at 370.

The District Court was correct that, during the course of the Bankruptcy Court's August 9, 2022 hearing, U Lock acquiesced in the determination that only the Trustee could bring claims of the type that U Lock itself had tried to assert:

- When asked, "You cannot usurp the power of a Trustee and take possession of an estate asset on your own. ***Do you realize that?***," U Lock's counsel responded, "Yes, Your Honor." A383 (emphasis added).

- When asked, "At this point, I'm inclined to just outright deny Adversary 22-2048, which is the stay violation brought by U LOCK because it was not pursued by the Chapter 7 Trustee on behalf of the U LOCK estate. ***So, any reason why I should keep that adversary on my calendar at this point, Mr. Roth?***," U Lock's counsel responded, "No. No, Your Honor." A388 (emphasis added).

As the District Court noted, A004, U Lock did not respond to the Bankruptcy Court's repeated inquiries by asking for more time, an opportunity to further research and brief the relevant issues, or any other respite from that court's promised disposition. *See generally* A382-88.

The Bankruptcy Court then announced that it would do what it was initially inclined to do, and what U Lock had just told that court it

38

had no reason to prevent.  A388.  That court followed through by
entering an order the following day that dismissed the Adversary
Proceeding.  A010 at #5.  Given the complete acquiescence when some
resistance might have mattered, it is remarkable that U Lock is still
litigating this issue almost two years later.  For this reason, as well,
this Court should affirm the decisions below.

## C. <u>The Bankruptcy Court Was Correct to Dismiss the Adversary Proceeding.</u>

### 1. *The Standard of Review*

A bankruptcy court's decision on a request for substitution of a
party is reviewed for abuse of discretion.  *Infinity Investors Ltd. v.
Kingsborough (In re Yes! Entm't Corp.)*, 316 B.R. 141, 145 (D. Del. 2004
(citing *Icon Group, Inc. v. Mahogany Run Dev. Corp.*, 829 F.2d 473, 476
& n.3 (3d Cir. 1987)).

### 2. *The Bankruptcy Court Could Not Have Substituted Another Person or Entity for U Lock.*

U Lock appears to suggest that, if it had no claim for violation of
the automatic stay, then the Bankruptcy Court should have allowed
Snyder to substitute in for it or forced the Trustee to do so.[14]

---

[14] U Lock also claims to be outraged by the prospect that the Trustee
could have attempted to sell Biros any claims related to stay violations.

Neither of these assertions makes any sense. The Trustee clearly stated that he had no interest in prosecuting the purported claims in the Adversary Proceeding; he told the Bankruptcy Court that he had directed Roth, as U Lock's attorney, to dismiss the proceeding. A383-84. Biros is unaware of any authority for the proposition that a Chapter 7 debtor or even a bankruptcy court can compel an unwilling trustee to pursue a particular action.

U Lock certainly provides none. Instead, it points to two cases involving willing trustees, *see Bauer v. Commerce Union Bank*, 859 F.2d 438, 440 (6th Cir. 1988) (noting trustee's choice in face of direction to "either join, authorize, or abandon" action commenced by debtors); *Nagle v. Commercial Credit Business Loans, Inc.*, 102 F.R.D. 27, 31 (E.D. Pa. 1983) (substituting trustee who had sought leave to intervene with plaintiffs), and a case in which there was not yet a trustee to decide whether to substitute himself or herself for the debtor plaintiff, *Cain v. Hyatt*, 101 B.R. 440, 443 (E.D. Pa. 1989). Among the Sixth's

---

This feigned outrage is hard to reconcile with the requirements of 11 U.S.C. § 363 for a notice and hearing prior to any sale of an estate's assets. If U Lock or its attorney could have claimed ignorance of this requirement at the outset of the U Lock Bankruptcy Case, he can hardly do so now. *See* A432-42.

Circuit "join, authorize or abandon" options, the Trustee has made his choice clear, and that choice supports the Bankruptcy Court's dismissal of the Adversary Proceeding.

For the same reason, U Lock's invocation of Fed. R. Civ. P. 17(a), *see* Fed. R. Bankr. P. 7017, is of no use to U Lock. The Bankruptcy Court inquired about the Trustee's interest in pursuing the claims that U Lock attempted to make. A383. The few seconds between that court's making that inquiry and the Trustee's responding both that he had read U Lock's complaint and then told U Lock's counsel here "to withdraw it," A383, and that he was "not pursuing these claims," A383-84, was more than reasonable to meet the requirements of these rules.

The suggestion that the Bankruptcy Court should have allowed Snyder to take control of the Adversary Proceeding is even stranger.[15] Again, the Bankruptcy Code authorizes a Chapter 7 trustee to collect and account for the assets of the bankruptcy estate. It no more gives

---

[15] U Lock's (and, apparently, Snyder's, see Doc. 30) assertion that the Bankruptcy Court denied Snyder's motion to intervene because Snyder lacked the approval of the trustee in her own bankruptcy is wrong. The Bankruptcy Court denied Snyder's motion because that motion was moot. A010 at #4 ("[T]he Motion is DENIED without prejudice as the underlying adversary is DISMISSED."). *See also* A004 ("and denying Snyder's motion to intervene, as moot").

that power to a claimed creditor than it gives that power to a debtor.

*See* 11 U.S.C. § 704(a).

Moreover, Snyder's purchase from the Trustee of certain assets of the Bankruptcy Estate did not authorize her to pursue the attempted claims in the Adversary Proceeding.[16]  As the Bankruptcy Court was

---

[16] On May 26, 2024, Snyder filed what she claims to be an appellee's brief in this appeal.  Doc. 30.  While Snyder's brief is late – U Lock filed its brief on March 27, 2024, and Snyder never sought or received any extension of the period in which to file a responsive brief, *see* Fed. R. App. P. 31(a)(1); Doc. 14-2 – the more fundamental problem is that Snyder is not an "appellee.  In her brief, Snyder attacks the judgment of the Bankruptcy Court and the District Court, arguing that those courts should have permitted her to pursue claims in the Adversary Proceeding.  Doc. 30 at 2 ("this Court should remand to reconsider the matter").  However, she never filed a notice of appeal from the District Court's decision.  *See* A008, A013-14.  Accordingly, as Biros explained in her motion to strike Snyder's appearance, Doc. 17 at p.8, Snyder cannot now attack the decisions below.  *See United States v. American Railway Express Co.*, 265 U.S. 425, 435 (1924) ("It is true that a party who does not appeal from a final decree of the trial court cannot be heard in opposition thereto when the case is brought here by the appeal of the adverse party.  In other words, the appellee may not attack the decree . . .") (emphases added);  *See also Jennings v. Stephens*, 574 U.S. 271, 276 (2015) (citing *American Railway Express*); id. at 284 (Thomas, J., dissenting) (same); *Black's Law Dictionary*, at 64 (6th ed. abridged) (defining "Appellee" as "The party in a cause against whom the appeal is taken; that is, the party who has an interest adverse to setting aside or reversing the judgment.").  In denying Biros's motion to strike, the Clerk of this Court stated that its order was "without prejudice to renewal once briefs have been filed in this case" and invited the parties to address the issue of Snyder's participation in their briefs.  Doc. 23.  Snyder attempts to evade these problems by labeling herself a "friend of

careful to note in its "Order Confirming Sale," Snyder purchased only

U Lock's *pre*-petition claims from the Trustee.  A433-34.  An automatic

stay comes into existence *on the filing of the petition*.  11 U.S.C.

§ 362(a); *see In re Denby-Peterson*, 941 F.3d 115, 119 (3d Cir. 2019).

Any violation of that stay, therefore, occurs *post*-petition.  Snyder's

purchase therefore gave her no rights in the claims that U Lock

attempted to assert in the Adversary Proceeding,[17] and the Bankruptcy

Court was correct to dismiss that proceeding.

_____

the court," Doc. 30 at 1, but she has never sought either leave or consent
to proceed in that manner.  *See* Fed. R. App. P. 29(a)(2).

[17] Standing must be evaluated on a claim-by-claim basis.  *In re
Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 678
F.3d 235, 245 (3d Cir. 2012) (citing *DaimlerChrysler Corp. v. Cuno*, 547
U.S. 332, 352 (2006)).  Thus, whatever standing Snyder might have
claimed to attempt to recover for her purported "emotional damage"
would have been of no use to her in trying to establish that she could
pursue any claims for alleged post-petition damage to the property
interests of the Bankruptcy Estate.  In addition, as Snyder did not
appeal from the District Court's decision in this matter, her
independent claims are not before this Court.

## CONCLUSION

Because U Lock's appeal to the District Court was untimely, this Court should dismiss this appeal and remand this matter to the District Court with directions to vacate its decision affirming the order of the Bankruptcy Court and to dismiss U Lock's appeal.  In the alternative, for the reasons stated above, this Court should this Court should affirm the judgment of the District Court.

Respectfully submitted,

BERNSTEIN-BURKLEY, P.C.

By: *Stuart C. Gaul, Jr.* _____
Stuart C. Gaul, Jr., Esquire
PA ID #74529
601 Grant Street, 9th Floor
Pittsburgh, PA 15219
Telephone: (412) 456-8100
Facsimile:  (412) 456-8135
sgaul@bernsteinlaw.com

*Counsel for Appellee*

## COMBINED CERTIFICATIONS

I, Stuart C. Gaul, Jr., hereby certify as follows:

1.     **Bar Membership.** I certify that I am a member in good standing of the Bar of the United States Court of Appeals for the Third Circuit.

2.     **Word Count and Typeface.** This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,091 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Mac, ver. 16.83 in 14-point, Century.

3.     **Service.** I certify that on the 28th day of May 2024, I filed this brief with the Clerk of United States Court of Appeals for the Third District via the Court's CM/ECF system, which will cause service on all counsel and parties of record, who are registered as CM/ECF users.

4.     **Identical Compliance of Brief.** The text of the electronically filed brief and the text of the paper copies are identical.

5.    **Virus Check.**  A virus check has been performed on the PDF file containing the brief. The virus check was completed using SentinelOne and no viruses were found.


Dated: May 28, 2024                     */s/ Stuart C. Gaul, Jr.*
                                        Stuart C. Gaul, Jr., Esquire
                                        PA ID #74529
                                        BERNSTEIN-BURKLEY, P.C.
                                        601 Grant Street, 9th Floor
                                        Pittsburgh, PA 15219
                                        Telephone: (412) 456-8100
                                        Facsimile:  (412) 456-8135
                                        sgaul@bernsteinlaw.com

                                        *Counsel for Appellee*